CHIRON RECOVERY CENTER,
LLC, et al.,

      Plaintiffs,

v.

UNITED HEALTHCARE
SERVICES,INC. & UNITED
HEALTHCARE INSURANCE
COMPANY,

      Defendants.

_____/

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

      This cause is before the Court on Defendants' Motion to Dismiss [DE 61]. The Motion has been fully briefed. For the reasons set forth below, the Motion is granted and this case is dismissed with prejudice.

### I.      FACTUAL ALLEGATIONS & BACKGROUND

      This matter originated in case 18-CV-81761, styled as *Chiron Recovery Center, LLC v. United Health Group, Inc.* ("*Chiron I*"). The plaintiff in *Chiron I*, Chiron Recovery Center, is a medical service provider. Chiron initiated that action because of a fee dispute with the defendant United Health Group. Stated succinctly, United initially paid certain benefits (on behalf of various insureds) to Chiron in connection with treatment that Chiron provided. Later, however, United determined that it had overpaid and, as a result, United applied certain offsets towards future payments to Chiron. As a result, Chiron filed *Chiron I*, alleging that United's offsets were improper and that United's conclusion that it had overpaid was in violation of the governing insurance plans. During *Chiron I*, it became apparent that Chiron did not possess all of the

insurance plans at issue. After an adverse discovery ruling wherein discovery was stayed, Chiron initiated the instant lawsuit.[1] This lawsuit seeks to obtain the insurance plans that were missing in *Chiron I*.

Chiron is not the only Plaintiff in this suit; utilizing a power of attorney, Chiron has also brought this suit on behalf of many insureds. United and a related company are both Defendants in this suit and in *Chiron I*. After Plaintiffs filed suit, Defendants filed a motion to dismiss. The Court referred the motion to the Honorable Magistrate Judge Bruce E. Reinhart for a Report and Recommendation. Judge Reinhart concluded that Plaintiffs' Complaint should be dismissed. Over objection, the Court adopted Judge Reinhart's Report and dismissed Plaintiffs' Complaint with leave to amend. Important to this case is the fact that while the Court permitted Plaintiffs to amend their Complaint, the Court ruled that Plaintiffs could not add new parties or new claims. After Plaintiffs filed their Amended Complaint, Defendants filed a new motion to dismiss. That motion to dismiss is the motion pending before the Court.

## II.    STANDARD OF REVIEW

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), this Court must accept all factual allegations in a complaint as true and take them in the light most favorable to the plaintiff; however, a plaintiff is still obligated to provide grounds of his or her entitlement to relief which requires more than labels, conclusions and a formulaic recitation of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561-563 (2007). Unwarranted deductions of fact in a complaint cannot be admitted as true for the purposes of testing the sufficiency of the allegations. *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416

---

[1] Plaintiffs bring sixteen counts (under ERISA) with each count premised on Plaintiffs' demand for copies of their insurance plans.

F.3d 1242, 1248 (11th Cir. 2005). The facts as pled must state a claim for relief that is plausible on the face of the pleading. *Iqbal*, 556 U.S. at 678-69.

## III.    ANALYSIS

Defendants request that the Amended Complaint be dismissed with prejudice.  In support of their request, Defendants make a variety of arguments including: (A) the Amended Complaint fails to comply with the Court's prior order of dismissal, (B) the Amended Complaint fails to correct the deficiencies identified in the court's prior order of dismissal, and (C) the Amended Complaint fails to state a claim as a matter of law.  The Court discusses each of these issues in turn.  Because the Court concludes that the Amended Complaint should be dismissed, the Court also discusses (D) whether the Amended Complaint should be dismissed with or without prejudice.

### A.  The Amended Complaint's Compliance with the Court's Prior Order of Dismissal

In the Court's Order Dismissing Plaintiffs' Complaint at docket entry 47, the Court granted Plaintiffs leave to amend.  In permitting Plaintiffs leave to amend, however, the Court expressly stated, in bold: "**Plaintiffs may not add additional plaintiffs or claims**."  DE 47 at 2. Two days before Plaintiffs' amended complaint was due, Plaintiff filed an expedited motion for leave to file amended complaint and motion for clarification, attaching their proffered amended complaint.  DE 48.  At no point in Plaintiffs' motion did Plaintiffs request leave of the Court to add additional plaintiffs.  The Court ruled on the relief requested by Plaintiffs as follows:

> PAPERLESS ORDER denying 48 Plaintiffs' Motion for Leave to File Proposed Amended Complaint. The new defendants and claims that Plaintiffs seek to add will unnecessarily complicate this proceeding, the core issue of which is whether Defendant United Healthcare is required under ERISA to provide Plaintiffs with certain plan information. Thus, the Court exercises its discretion under Fed. R. Civ. P. 1, which requires courts to employ the Federal Rules of Civil Procedure to

secure the just, speedy, and inexpensive resolution of actions, and declines to permit Plaintiffs to add the following: (1) seven employer defendants with ERISA claims against those defendants, and (2) three claims against United Healthcare for breach of fiduciary duty. Plaintiffs shall file an Amended Complaint, omitting the seven employer defendants and the three breach of fiduciary duty claims, by no later than December 12, 2019.

DE 55. When Plaintiffs filed their amended complaint, however, Plaintiffs added six new individual Plaintiffs. DE 61 at 3 (containing a list of the newly-added Plaintiffs). Plaintiffs also brought approximately sixteen new claims—claims seeking injunctive relief. Defendants argue that Plaintiffs' Amended Complaint should be dismissed because the Amended Complaint fails to comply with the Court's prior dismissal.

In response, Plaintiffs argue that the Court knew that they intended to add more parties and that the Court approved Plaintiffs' request. That is wrong for several reasons. First, the Court's ruling in no way granted Plaintiffs such permission. DE 55. Second, the Court's prior order of dismissal could not be clearer as it stated, in bold, that Plaintiffs were not to add any new parties or claims. DE 47. Third, Plaintiffs' motion for leave to amend and motion for clarification contained no discussion on this topic. Fourth, for authority that the Court granted Plaintiffs permission, Plaintiffs cite to a footnote in their reply. DE 50 at 2 n.1. But a party may not request new relief in a reply, Local Rule 7.1(c),[2] and, furthermore, Plaintiffs' footnote did not contain a complete summary of the newly-added Plaintiffs and claims. In conclusion, (i) the Court's order of dismissal (prohibiting new parties or claims) was abundantly clear, (ii) Plaintiffs' motion for leave to amend and clarification did not seek leave to add new parties, (iii) the Court **denied** Plaintiffs' motion, (iv) the Court's denial did not affirmatively grant Plaintiffs leave to add additional parties or claims, (v) the Court was not on notice of Plaintiffs' unilateral

---

[2] Plaintiffs are well aware of the limited scope of a reply considering that Plaintiffs filed a motion to strike Defendants' reply at docket entry 70.

understanding that it was seeking relief not specified in its motion, and, as a result, (vi) Plaintiffs' Amended Complaint violated the orders of this Court.

## B. The Amended Complaint's Correction of Pleading Deficiencies

The Court's prior order of dismissal adopted the Report and Recommendation of Magistrate Judge Bruce. E. Reinhart. Pursuant to that adoption, the Court dismissed Plaintiffs' Complaint on the grounds that the Complaint did not plausibly allege that Chiron instituted this action, using a power of attorney, *for the benefit of the individual Plaintiffs*:

> An attorney-in-fact may not act for its own benefit; it must only act for the benefit of its principal. *See In re Estate of Bell*, 573 So. 2d 57, 59 (Fla. Dist. Ct. App. 1990) (power of attorney did not authorize agent to use principal's funds for her own personal benefit); *see also Martin v. Sealey*, 1985 WL 1177602, at *2 (Terr. V.I. Feb. 7, 1985) ("Absent specific authority to do otherwise, an attorney in fact may act only for the benefit of the principal.") (citing Restatement (Second) of Agency § 39). So, the POA authorizes Chiron to bring this action under Section 1024(c) only if doing so is related to obtaining insurance payments *for the benefit of the Individual Plaintiffs.*

> The existing Complaint does not contain sufficient facts to establish a plausible claim that obtaining the plan documents will benefit the Individual Plaintiffs, as opposed to benefiting Chiron. The sole factually relevant portion of the Complaint is Paragraph 61, which states:

>> These Plaintiffs have brought an eleven-count action against UHC, its parent company, and UBH for a number of claims under ERISA and state-law claims. *See* Case No. 9:18-cv-81761-RLR. The crux of the case against UHC is summed up by the introductory paragraph in the Amended Complaint:

>> This case stems from an ongoing scheme by UnitedHealth Group Incorporated ("UnitedHealth") and its subsidiaries, United Behavioral Health, Inc. ("UBH") (which operates under the brand name OptumHealth Behavioral Solutions) and United Healthcare Services, Inc. ("UHC"), to do an end run around their obligations to provide behavioral health treatment. For years, UnitedHealth has sought to reduce "benex"—benefit expenses—by finding creative ways to avoid paying for behavioral health treatment.

DE 27 at ¶ 61.

> Even assuming the Complaint here incorporates by reference the Amended
> Complaint in Chiron I, this Court has previously held that the Amended
> Complaint is legally insufficient. Among the deficiencies is that the Amended
> Complaint in Chiron I fails to identify which Individual Plaintiffs had claims paid
> in full and why those Individual Plaintiffs continue to suffer an Article III injury.
> See Chiron I (DE 86 at 12). The same deficiencies exist here. The Complaint does
> not allege which, if any, of the Individual Plaintiffs have unpaid claims, nor does
> it otherwise allege how obtaining the plan documents from Defendant will assist
> the Individual Plaintiffs in obtaining payments that ultimately benefit them. Put
> differently, Chiron as attorney-in-fact can seek relief under Section 104(b)(4) for
> an Individual Plaintiff only if that Individual Plaintiff is still owed payment or
> reimbursement. Otherwise, Chiron is not acting within the scope of the POA; it is
> acting to obtain payment for itself, not for the Individual Plaintiff. Because the
> Complaint is devoid of facts relating to whether each Individual Plaintiff is owed
> payment or reimbursement, it does not allege sufficient facts to state a plausible
> claim that Chiron is acting within the score of the POAs.

DE 30 at 14-15.

In the Amended Complaint, Chiron continues to allege that this action has been instituted for *Chiron's* benefit. By way of example, the Amended Complaint reads: "As described in another lawsuit, [Defendant] is currently denying payment for benefit claims *submitted by Chiron* for services *rendered by Chiron. Chiron is pursuing those claims. . . .*" Amended Complaint, paragraph 87 (emphasis added). As Judge Reinhart explained, Chiron can only maintain this action on behalf of an individual Plaintiff when the individual Plaintiff "is still owed payment or reimbursement." DE 30 at 15. Plaintiffs contend that the Amended Complaint now alleges a benefit to the individual Plaintiffs because some of the individuals owe a debt (or may owe a debt) to Chiron and, if Chiron can obtain a payment from Defendants that that will "reduce their debt." On this point, the case of *Williams v. Blue Cross and Blue Shield* is instructive. 2010 WL 4025857 (N.D. Fla. Oct. 12, 2010).

In *Williams*, plaintiffs received diagnostic scans.  *Id.* at *1-2.  An insurer initially made full payments for the scans but later, after an audit, the insurer "recouped" payment for the scans, concluding that it had paid too much in its original payment (a scenario greatly resembling the instant case).  *Id.*  The plaintiffs in *Williams* sued the insurer for the amount of the "recouped" payment.  *Id.*  The trial court concluded, however, that the plaintiffs lacked standing to pursue such a claim.  *Id.* at *3.  The plaintiffs lacked standing because they had no financial responsibility to pay the provider for the recouped payment and the provider had no intention of collecting the balance from the plaintiffs.  *Id.*  Thus, the plaintiffs had no injury for which they could sue.  *Id.* (citing *Lanfear v. Home Depot, Inc.*, 536 F.3d 1217, 1222 (11th Cir. 2008); *Weaver v. BCBSF Life Ins. Co.*, 370 F. App'x 822, 823 (9th Cir. 2010)); *see also Borg v. Phelan*, No. 16-CV-2070, 2017 WL 2226649, at *4 (M.D. Fla. May 22, 2017) (risk of being charged additional fees was too speculative to support standing); *Loftin v. KPMG LLP*, No. 02-CV-81166, 2003 WL 22225621, at *7 (S.D. Fla. Sept. 10, 2003) (speculation regarding the nature and amount of impending tax payment did not support standing).

Here, Plaintiffs have not adequately alleged an injury.[3]  Were any individual Plaintiffs required to make out-of-pocket payments for treatment?  Plaintiffs do not say.  Is Chiron enforcing its debt against the individual Plaintiffs?[4]  Plaintiffs do not say.  If the individual Plaintiffs have paid no fees out-of-pocket, and no provider intends to collect upon a debt in connection with rendered services, how can those Plaintiffs be owed anything under their

---

[3] As Judge Reinhart explained, Chiron must allege that the individual Plaintiffs are owed payment or reimbursement.  If the individual Plaintiffs made no payments and no provider will seek to collect a debt from the individual Plaintiffs, there can be no basis for the individual Plaintiffs to seek payment or reimbursement, just as in *Williams*.

[4] The Court cannot discern how Chiron's counsel could collect upon Chiron's debt as to the individual Plaintiffs while simultaneously filing lawsuits in their name, given Florida conflict-of-interest rules.  *See* Rule 4-1.7(a)(1) of the Rules Regulating the Florida Bar ("A lawyer must not represent a client if the representation of one client will be directly adverse to another client.").

respective plans?   Plaintiffs do not explain.[5]   None of these issues are addressed in the Amended Complaint, and these are precisely the issues which Plaintiffs were required to explain by virtue of the Court's order of dismissal because only a full explanation of these issues will permit the Court to plausibly infer that Chiron has instituted this action for the benefit of the individual Plaintiffs.   What *is* clear in the Amended Complaint is that Chiron has a dispute with the Defendants and that Chiron seeks relief for its *own* benefit.   *E.g.,* paragraph 1 of the Amended Complaint.   Plaintiffs were given the opportunity to amend and plausibly allege a basis for Chiron to institute this action through a power of attorney—Plaintiffs have failed to do so; Plaintiffs have not cured the problems identified in the Court's prior order of dismissal.

### C. Whether the Amended Complaint States a Claim

Many of Plaintiffs' claims are premised upon 29 U.S.C. § 1132(c).   Those claims contend that (1) Defendants are plan administrators, (2) Plaintiffs served a written request for plan documents to the Defendants, (3) under section 1132, Defendants (as plan administrators) were required to provide the plan documents, and (4) no plan documents were provided.   All parties agree that under section 1132, only a plan administrator may be held liable, and binding case law upon this Court confirms this is true.   *Byars v. Coca-Cola Co.*, 517 F.3d 1256, 1270 (11th Cir. 2008) ("Finally, [defendant] was not subject to document withholding penalties, as [section 1132] only permits an award of penalties against the plan administrator."); *see also Brown v. J.B. Hunt Transp. Servs, Inc.*, 586 F.3d 1079, 1088 (8th Cir. 2009) (affirming dismissal of a section 1132 claim against an insurance company that was a claims administrator, but not the plan administrator).   Defendants have attached a plethora of documentation and evidence to their

---

[5] While the individual Plaintiffs may not need a harm to require their plan documents, Chiron must have some basis to invoke its power of attorney.

motion to dismiss to support the contention that the Defendants have not been designated as the

plan administrators in this case.[6]  Plaintiffs do not argue the Defendants *have* been designated as

plan administrators; instead, Plaintiffs make the legal argument that this Court should conclude

that Defendants are plan administrators even though the plan documents do not designate them

as such.  Plaintiffs argue this Court should use a "functional test" or a "*de facto*" test to conclude

that Defendants are effectively plan administrators.  Each test is discussed in turn.

<u>The Functional Test</u>

According to Plaintiffs, some courts conclude that an entity is a plan administrator only if

the plan so designates the entity.  *See Swint v. Protective Life Ins. Co.*, 779 F. Supp. 532, 550

n.41 (S.D. Ala. 1991).  Other courts, Plaintiffs argue, use a "functional" test, holding that a plan

designates an administrator by giving that person or entity final authority over the plan.  For this

proposition, Plaintiffs cite to two cases.  *Estate of Bratton v. Nat'l Union Fire Ins. Co*, 215 F.3d

516, 522 n.7 (5th Cir. 2000); *Vega v. Nat'l Life Ins. Servs., Inc.*, 145 F.3d 673, 677 (5th Cir.

1998).[7]  Also according to Plaintiffs, the Eleventh Circuit has not squarely ruled on this issue and

Plaintiffs argue that this Court should utilize a functional test to determine that the Defendants

are plan administrators.

Plaintiffs' authority, however, is distinguishable from the instant case.  Neither case cited

by Plaintiffs involved a request for plan documents under section 1132.  Both *Bratton* and *Vega*

involved other types of ERISA violations, such as the denial of a claim under a policy.  In

---

[6] Arguably, these documents are incorporated and/or referenced in Plaintiffs' Amended Complaint (as well as being central to the claims) and, as a result, the Court may consider the documents.  *E.g., Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002).  In any event, Plaintiffs do not dispute the documents or argue that the Court should not consider the documents as being outside of the four corners of Plaintiffs' Amended Complaint; Plaintiffs' position is limited to arguing the legal issue discussed above.

[7] Plaintiffs cite a third case, *Watson v. Paul Revere Life Insurance Co.*, 11-CV-21492, 2011 WL 13223670 (S.D. Fla. Aug 15, 2011), but that case did not use a "functional" test—it use a "*de facto*" test and is discussed below.

contrast to *Bratton* and *Vega*, there is authority within this circuit, analyzing section 1132 claims, that concludes that the Defendants may *not* be considered plan administrators; that authority is discussed below.

The *De Facto* Test

Plaintiffs also argue that Defendants should be considered "*de facto*" plan administrators. For authority, Plaintiffs rely upon *Watson v. Paul Revere Life Insurance Company*, 11-CV-2011, 2011 WL 13225670 (S.D. Fla. Aug. 15, 2011). *Watson* does support Plaintiffs' argument insofar as *Watson* held that, at least at the motion to dismiss stage, a court should defer to a plaintiff's allegation that a third party is a plan administrator so that evidence may be obtained to see if the third party was in fact the *de facto* administer of a plan, even if the third party was not designated as a plan administrator in the plan documents. *Id.* at *6 ("Despite [plan provisions stating the defendant was not a plan administrator], it is premature to determine that [defendant] did not exert sufficient control over the claims process to constitute a plan administrator."). *Watson* was a section 1132 case and is therefore factually analogous to the instant case. In reaching its decision, the *Watson* court distinguished Eleventh Circuit authority, *Oliver v. Coca Cola Co.*, 497 F.3d 1181 (2007), which facially stood for the proposition that a third party (such as the Defendants in the instant case) could *not* be held liable under section 1132 when another entity was officially designated as the plan administrator.

In contrast to *Watson* (a district court case), however, there is more recent authority for the proposition that *Watson* was wrongly decided, including Eleventh Circuit authority. In a far more recent case than *Watson*, *Smiley v. Hartford Life & Accident Insurance Co.*, 610 F. App'x 8, 8 (2015), the Eleventh Circuit held that a third party (like the Defendants in the instant case)

10

cannot be held liable under section 1132 when another entity is designated as a plan administrator. Not only that, the Eleventh Circuit expressly disavowed the *de facto* plan administrator test. *Id.* at 8-9 ("We have consistently rejected the use of the *de facto* plan administrator doctrine 'where a plaintiff has sought to hold a third-party administrative services provider liable, rather than the employer.'"). In its ruling, the Eleventh Circuit cited for authority the very case that the *Watson* court distinguished—*Oliver v. Coca Cola*—which strongly suggests that the *Watson* court was wrong to limit the applicability of that case.

Although *Smiley* is an unpublished case, this Court finds *Smiley* to be persuasive, particularly in light of the amount of authority in this Circuit, post *Watson*, that aligns with the *Smiley* decision. *E.G. v. Companion Benefit Alts., Inc.*, No. 18-CV-265, 2018 WL 4623653, at *4 (S.D. Ala. Sept. 26, 2018) (explaining that "courts in this Circuit have routinely determined that the *de facto* plan administrator doctrine has no valid application to third-party service providers (as opposed to employers)"); *Rohan v. UnitedHealthcare Ins. Co.*, 881 F. Supp. 2d 1356, 1359-60 (N.D. Fla. 2012) ("The Eleventh Circuit has expressly rejected attempts to impose *de facto* plan administrator status on third-party administrator services providers."); *Poole v. Life Ins. Co. of N. Am.*, 984 F. Supp. 2d 1179, 1191-92 (M.D. Ala. 2013) ("[C]laims administrators are distinct from plan administrators, and only plan administrators are subject to the ERISA penalties set out in [section 1132]."). In conclusion, this Court aligns itself with *Smiley* and other case law in this Circuit that stands for the proposition that third party defendants such as the Defendants in this case cannot be found to be plan administrators for the purposes of section 1132 litigation. As a result, each of Plaintiffs' section 1132 claims against Defendants must be dismissed.

**D. The Finality of the Court's Dismissal**

Each of Plaintiffs' sixteen counts falls into one or more of the following categories: (1) the count improperly added a new party in violation of the Court's prior order of dismissal, (2) the count improperly added a new claim in violation of the Court's prior order of dismissal, (3) the count is precluded because Defendants are not plan administrators, or (4) the count does not establish how Chiron's power of attorney is being exercised for the benefit of the individual Plaintiffs, as discussed in the prior Report and Recommendation and the Court's order adopting the same. Dismissal is therefore appropriate. The Court considers whether dismissal should be with prejudice or without prejudice.

When a party fails to comply with a court order, a court may dismiss the action. *Zocares v. Castro*, 465 F.3d 479, 483 (11th Cir. 2006). Dismissal with prejudice is appropriate when the party's conduct was willful and lesser sanctions are inadequate. *Id.* When a court's order directs a party to amend a complaint in a particular manner, the court is within its discretion to dismiss the non-compliant amended complaint with prejudice. *Petrano v. Old Republic Nat. Title Ins. Co.*, 590 F. App'x 927 (11th Cir. 2014). Here, the Court concludes that Plaintiffs' non-compliance with the Court's prior order of dismissal was willful, and the Court concludes that lesser sanctions are inadequate for the reasons set forth below. *See* Section A, *supra*.

In addition to a court's authority to dismiss a case for violation of a court order, a court may also dismiss a case after a plaintiff has had an opportunity to amend. *E.g., Eiber Radiology, Inc. v. Toshiba America Medical Sys., Inc.*, 673 F. App'x 925, 930 (11th Cir. 2016) ("We have never required district courts to grant counseled plaintiffs more than one opportunity to amend a deficient complaint, nor have we concluded that dismissal with prejudice is inappropriate where

a counseled plaintiff has failed to cure a deficient pleading after having been offered ample opportunity to do so."). Here, Plaintiffs were on notice of the deficiencies in their Complaint, as the Court's prior order of dismissal (and Defendants' prior motion to dismiss) put Plaintiffs on notice of the deficiencies. Plaintiffs have had ample opportunity to amend their pleadings in this case. The Court concludes that dismissal with prejudice is appropriate in light of Plaintiffs' failure to cure the deficiencies in their pleadings after being put on notice of the same. *See* Section B, *supra*.

A court may also dismiss a case with prejudice when amendment would be futile. *E.g., Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999). For the reasons set forth in Section C, it would be futile for Plaintiffs to re-plead their claims alleging that Defendants are plan administrators.

A court may dismiss a case with prejudice when further amendment would unduly prejudice a defendant. *E.g., Maynard v. Bd. of Regents*, 342 F.3d 1281, 1287 (11th Cir. 2003). Here, the Court concludes that Defendants would be unduly prejudiced if Plaintiffs were permitted a third complaint in this action. As demonstrated by Plaintiffs' own Amended Complaint, this case is really an offshoot of another case pending before this Court, *Chiron I.* 18-CV-81761. DE 56 at 4 ("This action represents the second time [Chiron has] needed this Court's assistance.") (together with multiple references to *Chiron I*). The genesis of the instant case was an adverse discovery ruling in *Chiron I. Chiron I*, DE 43. Between *Chiron I* and the instant case, Plaintiffs have had, as of the date of this Order, five opportunities to assert their claims. Plaintiffs' complaints are very large and very complex. In *Chiron I*, for example, Plaintiffs' most recent complaint measures one hundred and fifty pages, with four hundred and

seventy-seven allegations. *Chiron I*, DE 98. The Court previously dismissed a complaint in *Chiron I*, and Defendants were required to file multiple motions to dismiss in connection therewith. Another motion to dismiss in *Chiron I* is likely once the Court lifts the pending stay. In the instant case, Defendants have again filed multiple motions to dismiss, and they have done so in the context of a confusing, forty-seven-page complaint with so many parties, mixed with so many counts, that Plaintiffs themselves have struggled to keep them all straight, let alone Defendants. *See* DE 50 at 2 n.1. Given the significant amount of resources that Defendants have had to expend responding to five extremely long, extremely confusing complaints across two separate cases, the Court concludes that a sixth complaint, filed in this action, would amount to undue prejudice to Defendants.

In conclusion, the Court finds that the sum total of all of the above factors warrants dismissal with prejudice: Plaintiffs willfully failed to comply with the Court's orders, Plaintiffs have had ample opportunity to amend with guidance from this Court, further amendment would be futile, and further amendment would unduly prejudice Defendants (which in turn explains why a lesser sanction, such as dismissal without prejudice, would be an inadequate sanction). Even so, case law requires this Court to exercise a dismissal with prejudice with caution. In recognition of this, the Court believes that its dismissal with prejudice can be tailored in such a way so as to minimize the resulting prejudice on the individual Plaintiffs in this case. The Court's dismissal with prejudice will not bar, in any way, the individual Plaintiffs from instituting their *own* suit for their plans in the future. What the Court's dismissal will bar is Plaintiff Chiron from re-filing the claims in this case.

The Court addresses one final matter. It is Defendants' representation to this Court, in its motion, that each and every properly-named individual Plaintiff has recently had their respective plan documents provided to them, even though Defendants had no legal obligation to provide the documents. The Court therefore notes that although the Court's dismissal is with prejudice, there would be no basis for Chiron to reinstitute this suit against the Defendants when the plan documents are in Chiron's possession.[8]

## IV. CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that Defendants' Motion to Dismiss [DE 61] is **GRANTED** and Plaintiffs' Amended Complaint is **DISMISSED WITH PREJUDICE**.[9] All other pending motions are **DENIED AS MOOT**. The Clerk of the Court shall **CLOSE THIS CASE**.

**DONE and ORDERED** in Chambers, West Palm Beach, Florida, this 7th day of February, 2020.

ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

Copies furnished to Counsel of Record

---

[8] For the reasons set forth in this Order, claims for monetary damages for delayed production do not apply to Defendants.

[9] The Court accepts and adopts each of Defendants' positions (not discussed in this Order) in the Motion and Reply without comment.

15